**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE LUIS MEDINA-LARA,
*Petitioner*,

v.

ERIC H. HOLDER, JR., Attorney
General,
*Respondent*.

No. 13-70491

Agency No.
A079-361-360

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
August 25, 2014—Seattle, Washington

Filed September 19, 2014

Before: John T. Noonan, Michael Daly Hawkins,
and Morgan Christen, Circuit Judges.

Opinion by Judge Hawkins

# SUMMARY[*]

## Immigration

The panel granted Jose Medina-Lara's petition for review of the Board of Immigration Appeals' decision finding him removable for his California state conviction of an aggravated felony, controlled substance offense, and firearm offense.

The panel found that the government conceded that California Health & Safety Code § 11351 is not a categorical controlled substance offense, and that Medina conceded that CHS § 11351's controlled substance element is divisible. The panel accordingly proceeded to apply the modified categorical approach, and held that the government did not carry its burden to establish that Medina's conviction is an aggravated felony or controlled substance offense, because the written, amended complaint and abstract of judgment did not provide clear and convincing evidence that he pled guilty to possessing or purchasing, for sale, cocaine. The panel held that Medina's CHS § 11351 conviction was thus neither an aggravated felony nor a controlled substance offense under the Immigration and Nationality Act.

The panel also held that the BIA erred in finding that the enhancement to Medina's CHS § 11351 conviction for carrying a firearm in violation of California Penal Code § 12022(c) constituted a categorical firearm offense. The panel found that former CPC § 12001(b), which defined "firearm" at the time of Medina's conviction, was overbroad

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

because recent California prosecutions demonstrated a realistic probability that the state could obtain a conviction even if the firearm was an antique. The panel further held that CPC § 12001(b) is indivisible, and that thus the modified categorical approach could not be applied.

The panel also held that although the IJ and BIA did not address Medina's second controlled substance conviction under CHS § 11377, the government was precluded from relitigating the issue of whether Medina was removable for that conviction. The panel granted Medina's petition for review, vacated the removal order, and remanded to the agency with the instruction that it grant Medina's motion to terminate proceedings.

## COUNSEL

Lori K. Walls, Washington Immigration Defense Group, Seattle, Washington, and Devin Theriot-Orr (argued), Gibbs Houston Pauw, Seattle, Washington, for Petitioner.

Stuart F. Delery, Assistant Attorney General, Civil Division, Cindy S. Ferrier, Assistant Director, Brendan P. Hogan (argued), Attorney, Civil Division, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.

## OPINION

HAWKINS, Circuit Judge:

Jose Medina-Lara ("Medina"), a Mexican citizen and lawful permanent resident of the United States, seeks review of a final order of the Board of Immigration Appeals ("Board") authorizing his removal to Mexico. The Board held that Medina is removable because his 2005 California drug conviction is both an "aggravated felony" and a "conviction relating to a controlled substance" and because a sentence enhancement appended to that conviction is a "firearm offense," as those terms are defined by the Immigration & Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2). Because each of these conclusions is erroneous, we grant the petition.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Immigration authorities admitted Medina as a lawful permanent resident in 2002. In 2005, a California court convicted Medina of violating California Health & Safety Code § 11351 and applied an enhancement for carrying a firearm during that offense in violation of California Penal Code § 12022(c). In 2007, a California court convicted Medina of violating California Health & Safety Code § 11377. All convictions were entered pursuant to plea agreements. We refer to these convictions by their statute number (e.g., the "§ 11351 conviction"). We refer to the § 11351 and the § 11377 convictions collectively as "the drug convictions."

After he completed his sentence for the § 11377 conviction, the Department of Homeland Security ("DHS") took Medina into custody and initiated removal proceedings.[1] Although the charging documents in the record are somewhat unclear, it appears that DHS alleged that the drug convictions render Medina removable because each is both an aggravated felony and a conviction relating to a controlled substance under the INA.[2] DHS further alleged the § 12022 conviction renders Medina removable because it is a firearm offense under the INA.[3] Medina denied these allegations and, in the alternative, applied for cancellation of removal.[4]

Proceedings before the agency were protracted. Medina first appeared before an Immigration Judge ("IJ") in San Francisco, California, on November 17, 2009. Medina

---

[1] Medina remained in DHS custody from the initiation of proceedings through oral argument before this court. Shortly after oral argument and consistent with our prior practice in such cases, we ordered the government to release Medina. *See Ragasa v. Holder*, 743 F.3d 688, 688 (9th Cir. 2014) (order).

[2] Non-citizens convicted of certain controlled substances offenses are removable under 8 U.S.C. § 1227(a)(2)(B)(I). Non-citizens convicted of "aggravated felonies" are removable under 8 U.S.C. § 1227(a)(2)(A)(iii), which incorporates the definitions listed at 8 U.S.C. § 1101(a)(43). Here, the relevant subparagraph is 8 U.S.C. § 1101(a)(43)(B), which pertains to drug trafficking crimes. We refer to these terms of art under the INA as an "aggravated felony" and a "controlled substance offense."

[3] Non-citizens convicted of certain offenses relating to firearms are removable under 8 U.S.C. § 1227(a)(2)(C). We refer to this term of art under the INA as a "firearm offense."

[4] Given our disposition of this petition, we do not discuss further or consider Medina's arguments pertaining to his application for cancellation of removal.

requested an initial continuance to obtain counsel and later requested additional time to pursue a U-visa. For its part, DHS requested several continuances to supplement the record with documents pertaining to Medina's convictions. This was necessary because the parties and the IJ seemed to agree early on in the proceedings that the drug convictions were not categorically predicate offenses under the INA, thus requiring application of the modified categorical approach as described in *Shepard v. United States*, 544 U.S. 13 (2005).

The first round of IJ proceedings took about six months and involved at least five separate requests by the IJ to have the government supply *Shepard*-compliant documents which would unambiguously establish the nature of Medina's convictions. At an early hearing, DHS represented that it was seeking additional documents to supplement the record, and the IJ granted a continuance, in part, to allow the government to respond to that request.[5] When, at a hearing six weeks later, the government produced no new documents, the IJ got specific, noting that "there must have been a super[s]eding charging document at some point and we don't have that" in the record. Once again, the IJ requested additional documentation, and later on in the same hearing, it appears DHS's attorney agreed to provide it, saying "[w]e need to get the super[s]eding indictment." The IJ granted another continuance.[6] Two weeks later, the government failed to produce the requested documents and yet again asked for more time. The IJ granted the government's request, saying, "let's . . . see what the government can come up with by way

---

[5] Hearing of December 1, 2009.

[6] Hearing of January 19, 2010.

of documents and the more the better."**7** Two weeks after that, the government did submit "additional documents"; however, even these appear to have been insufficient, because the IJ requested further *Shepard*-compliant documents so that the court could "get into a position where there's no ambiguity whatsoever about [Medina]'s convictions." The IJ specifically noted he wanted to avoid "a situation where it turns out later someone makes an assertion he was convicted of something and there's a dispute about it."**8**

Two and a half months later, the parties reconvened. The IJ, noting that the 2004 complaint contained "a complicated set of charges," called the minutes of the state court proceedings "a jumble" and once again asked the government to clarify if it had requested a transcript of Medina's 2005 plea colloquy, saying, "I think [the transcript] ought to be requested." Because the government was not sure if it had requested the documents, the IJ gave the government one more month to supplement the record. Medina, by now detained for five months, consented to the continuance even though he was ready to proceed on that date.**9** Finally, at a June 6, 2010, hearing, the government admitted it was unable to produce the transcript and instead attempted to submit a probation report to clarify the nature of Medina's convictions. The IJ excluded that report under *Shepard*.**10**

---

**7** Hearing of February 9, 2010.

**8** Hearing of February 25, 2010.

**9** Hearing of May 11, 2010.

**10** We do not recount the various continuances to fault the IJ for a failure to handle this matter expeditiously. It is important to note that Medina joined many of these requests for a continuance because he was seeking

Though the government neither produced the requested plea colloquy nor any additional unambiguous documents, the IJ nevertheless ordered Medina's removal, holding that each drug conviction is both an aggravated felony and a controlled substance offense under the INA and that the § 12022 conviction is a firearm offense under the INA. Medina appealed to the Board. In an order dismissing Medina's appeal (the "2010 order"), the Board held that Medina was removable on all five grounds identified by the IJ; put another way, the Board reached a conclusion as to all of DHS's allegations.

Medina then sought review in this court. Before we could hear the case on the merits, the Board *sua sponte* reopened Medina's case to reconsider his application for cancellation of removal. Divested of jurisdiction, we dismissed the pending petition for review. *Medina-Lara v. Holder*, 10-73377, ECF No. 48 (9th Cir. Feb. 16, 2012) (order).

The Board remanded the reopened case to the IJ for reconsideration of Medina's cancellation application. At this point, litigation virtually began anew. Following a transfer of venue to the immigration court in Tacoma, Washington, where Medina was detained, Medina renewed his efforts to terminate removal proceedings based on his theory that none of his convictions suffices as a predicate for removal, initiated state post-conviction proceedings in an effort to vacate his California convictions, and restarted his efforts to obtain a U-visa. DHS opposed these efforts and sought a new removal order. The Tacoma-based IJ ordered Medina's removal. The IJ held that § 11351, though not categorically

certification for a U-visa. We recite the procedural history to illustrate the ample opportunity DHS had to supplement the record.

an aggravated felony or a controlled substances offense, is divisible and that an application of the modified categorical approach showed that the § 11351 conviction constitutes both an aggravated felony and a controlled substance offense. The IJ further held that § 12022 is categorically a firearm offense under the INA, and thus ordered Medina removed on that ground as well. The IJ did not address the § 11377 conviction. Medina appealed to the Board, which affirmed, also without addressing the § 11377 conviction. Medina again sought review in this court.

## JURISDICTION AND STANDARD OF REVIEW

Notwithstanding 8 U.S.C. § 1252(a)(2)(D), we have jurisdiction to determine our jurisdiction and to determine as a question of law whether the underlying predicate offenses render Medina removable. 8 U.S.C. § 1252(a)(2)(D); *Malilia v. Holder*, 632 F.3d 598, 601–02 (9th Cir. 2011). While we may consider only those arguments raised in administrative proceedings, *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004), we deem exhausted any issues addressed by the Board. *Kin v. Holder*, 595 F.3d 1050, 1055 (9th Cir. 2010).

Where, as here, the Board incorporates the IJ's decision into its own without citing *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994), this court will review the IJ's decision to the extent incorporated. *Ahir v. Mukasey*, 527 F.3d 912, 916 (9th Cir. 2008) (citation omitted). Thus, we refer to the Board and IJ collectively as "the agency." We review the agency's legal conclusions de novo. *Malilia*, 632 F.3d at 602.

## ANALYSIS

### I. The § 11351 Conviction

We hold that Medina's § 11351 conviction is neither an aggravated felony nor controlled substance offense under the INA.

### A. Breadth and Divisibility

To determine whether the § 11351 conviction is a predicate aggravated felony or controlled substance offense, we use the framework set out in *Taylor v. United States*, 495 U.S. 575 (1990), as refined by its progeny, most notably *Descamps v. United States*, 133 S. Ct. 2276 (2013).[11] The *Taylor-Descamps* framework lays out a three-step process for determining whether a specific conviction is a predicate offense mandating removal under the INA.[12] At the first step, we ask whether the statute of conviction is a categorical match to the generic predicate offense; that is, if the statute of

---

[11] As we have noted, the agency held that the § 11351 conviction is both an aggravated felony and a controlled substance offense. Though these are two distinct holdings, we are able to consider them together because both turn on the same legal issue, namely, whether the list of California substances incorporated into § 11351 is overbroad compared to the federal Controlled Substances Act. *See* 8 U.S.C. § 1101(a)(43)(B) (aggravated felony) (defining "controlled substance[s]" as those appearing in the Schedules authorized by 21 U.S.C. § 802); 8 U.S.C. § 1227(a)(2)(B)(i) (controlled substance offense) (also referring to 21 U.S.C. § 802).

[12] The *Taylor-Descamps* line of cases developing and refining the categorical and modified categorical approach applies with equal force in both sentencing and immigration proceedings. *E.g.*, *Aguilar-Turcios v. Holder*, 740 F.3d 1294 (9th Cir. 2014); *see Rendon v. Holder*, – F.3d –, –, No. 10-72239, 2014 WL 4115930, at *2 n.5 (9th Cir. Aug. 22, 2014).

conviction criminalizes only as much (or less) conduct than the generic offense. *Taylor*, 495 U.S. at 600; *Rendon*, 2014 WL 4115930, at \*2. If so, the inquiry ends, because the conviction categorically constitutes a predicate offense. If not, we move on to step two and ask if the statute of conviction's comparatively "overbroad" element is divisible.[13] If not, then our inquiry ends, because a conviction under an indivisible, overbroad statute can *never* serve as a predicate offense. *See Descamps*, 133 S. Ct. at 2286. But if the overbroad element (or elements) is divisible, we then continue to the third step, an application of the modified categorical approach, which we describe in more detail below.

Here, because the agency proceeded to step three and relied upon a modified categorical analysis, we, too, must consider all three issues: breadth, divisibility, and the modified categorical approach. The parties' concessions make the analysis simple at steps one and two. Our focus is on the controlled substance element of § 11351.[14] The

---

[13] We discuss the concept of divisibility in great detail in *Rendon*, 2014 WL 4115930, at \*2–\*3. Because, as we discuss below, we are able to resolve this petition without delving into the fine details of the divisibility analysis, we have no occasion to apply *Rendon*'s framework.

[14] In pertinent part, § 11351 reads:

> [E]very person who possesses for sale or purchases for purposes of sale (1) any controlled substance specified in subdivision (b), (c), or (e) of Section 11054, specified in paragraph (14), (15), or (20) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055, or specified in subdivision (h) of

government concedes that § 11351 is not a categorical match to the generic offense, because California's list of controlled substances includes one or more substances not controlled by federal law. *See also Cheuk Fung S-Yong v. Holder*, 600 F.3d 1028, 1034 (9th Cir. 2010) ("We have previously found that California law regulates the possession and sale of many substances that are not regulated by the [federal] CSA."). This concession ushers us to step two, where Medina concedes that our recent decision in *Coronado v. Holder*, 747 F.3d 662 (9th Cir. 2014), *amended by* – F.3d –, 2014 WL 3537027 (July 19, 2014), forecloses his previous argument that § 11351's controlled substance element is indivisible. Based on this concession, we assume, without deciding, that § 11351's controlled substance element is divisible; that is, that the specific controlled substance (e.g., "cocaine") is an element of the crime.

## B.  Modified Categorical Approach

We now confront the third step in the *Taylor-Descamps* procedure: an application of the modified categorical approach. The modified categorical approach centers on a conviction's elements, not the facts underlying it. Under *Descamps*, it "makes no difference" if Medina actually possessed or purchased, for sale, cocaine. Rather, what matters is whether Medina was *convicted* of possessing or purchasing, for sale, cocaine, where cocaine is an element of

---

Section 11056, or (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug, shall be punished by imprisonment . . . ."

The statute has been amended since Medina's conviction, but not in relevant part. The operative, quoted language remains the same.

the crime. To make this determination, the agency (and we) may look to only those documents sanctioned by *Shepard*, namely: "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." 544 U.S. at 26.

We "permit[] reliance on an abstract of judgment in combination with a charging document to establish that the defendant pled guilty to a generic crime under the modified categorical approach." *Ramirez-Villalpando v. Holder*, 645 F.3d 1035, 1040 (9th Cir. 2011). Sitting en banc, we have held that "[i]n order to identify a conviction as the generic offense through the modified categorical approach, when the record of conviction comprises only the indictment and the judgment, the judgment must contain the critical phrase '*as charged in the Information*.'" *United States v. Vidal*, 504 F.3d 1072, 1087 (9th Cir. 2007) (en banc) (quoting *Li v. Ashcroft*, 389 F.3d 892, 898 (9th Cir. 2004)).

Subsequently, we have not been so exacting as to require that the phrase "as charged in the Information" appear on the abstract of judgment. *E.g.*, *Cabantac v. Holder*, 736 F.3d 787 (9th Cir. 2012) (per curiam) (looking to the allegations in a complaint where the abstract of judgment and transcript of the plea colloquy clearly referenced the count to which the defendant pleaded guilty); *id.* at 793–94 ("We hold that where, as here, the abstract of judgment or minute order specifies that a defendant pleaded guilty to a particular count of the criminal complaint or indictment, we can consider the facts alleged in that count."); *Ramirez-Villalpando*, 645 F.3d at 1041 (similar).

However, we have never retreated from *Vidal*'s core requirement: When a court using the modified categorical approach to determine whether an underlying conviction is a predicate offense relies solely on the link between the charging papers and the abstract of judgment, that link must be clear and convincing. Put another way, where, as here, the government bears the burden of proof to show by "clear and convincing evidence" that the § 11351 conviction is a predicate offense, 8 U.S.C. § 1229a(c)(3)(A); *accord Fregozo v. Holder*, 576 F.3d 1030, 1039 (9th Cir. 2009), the government must demonstrate that the abstract clearly and convincingly shows that Medina pleaded guilty to the "cocaine" element as alleged in the complaint.

The agency relied on two *Shepard*-approved documents, a written, amended complaint and an abstract of judgment, and so we look only to these. The amended complaint, which alleges five counts of misconduct, seems to have two docket numbers. The first, typewritten, is "04121514." The second, handwritten, is "SS 043284." The complaint is marked "Filed in Court" on April 20, 2005. Count "003" of the complaint alleges that "on or about December 20, 2004, the crime of possession for sale of a controlled substance, in violation of Section 11351 of the Health and Safety Code, a felony, was committed by Jose Luis Medina, who did willfully and unlawfully possess for sale a controlled substance, to wit, cocaine."[15] The complaint is certified by the clerk of the Superior Court of Monterey County, California.

---

[15] In the original document, several portions of the quoted material appear in all capital letters.

Box 1 on the abstract of judgment lists Medina's two convictions. The first row in this box deals with Medina's § 11351 conviction. (The second row pertains to the § 11377 conviction. We discuss that conviction below.) Under "Count," the document lists "3A." Under "Code," it lists "HS." Under "Section No.," it lists "11351." Under "Crime," it lists "Poss cont subs." Under "Year Crime Committed," it lists "2004." And under "Date of Conviction," it lists "04-20-05."[16]

Box 2 pertains to "Enhancements." The first line in this box (and the only line containing any information) lists under "Count" the number "3" and under "Enhancement" the reference to "PC 12022(c)."[17] The only other relevant "box" on this form appears toward the top-right corner. It is labeled "-A" and contains this number: "SS043284A."

Here, the government has failed to carry its burden of showing a clear and convincing link between the abstract and the charging papers. Recall that our focus is on the controlled substance element of § 11351. While the *complaint* clearly bases count three on the alleged possession for sale of cocaine, the *abstract* does not list the specific controlled substance element to which Medina pleaded guilty. Instead, it simply contains the phrase "cont sub." This critical ambiguity materially distinguishes this case from *Cabantac*, in which the abstract clearly specified that the conviction was

---

[16] Other information pertaining to Medina's sentence is also listed. It is not relevant to this petition.

[17] This line also contains sentencing information irrelevant here.

for "possession of methamphetamine."[18] 736 F.3d at 792–93; *see also Ramirez-Villalpando*, 645 F.3d at 1041 (holding that the abstract, which contained the term "pers prop," was sufficient to establish that the defendant pleaded guilty to the element of theft of personal property).

This is not the only ambiguity in the link between the abstract and the complaint. The abstract states Medina pleaded to count "3A," not count "3" as it is denominated in the complaint. The Tacoma Immigration Judge posited that the "3A" reflected the fact that the third count of the complaint contained both the § 11351 charge and the § 12022 enhancement, in that order, and so the "A" referred to the main charge rather than the count as a whole or the enhancement. The government defends this theory and also advances its own, namely, that the "3A" refers to the "-A" box toward the upper right-hand side of the abstract, in which a docket number is printed.

While these are both *plausible* explanations of what the abstract *might* mean, they suffer a common and fatal flaw.[19] If, as the IJ posited, the "3A" were a function of the

---

[18] In *Cabantac*, the Board reviewed the original abstract of judgment, which listed "methamphetamine" under "crime." Cabantac later procured an amended abstract which did not list the drug. 736 F.3d at 793. There, the Board denied a motion to reopen, and we declined to remand to the Board for reconsideration in light of the amended abstract, noting that even the amended version still unambiguously stated that Cabantac had pleaded guilty to a specific count of the complaint. As we explain below, that is not the case here.

[19] Even if the government's alternative argument were persuasive, we could not entertain it because we lack authority to affirm the Board on any ground not stated in its decision. *Navas v. I.N.S.*, 217 F.3d 646, 658 n.16 (9th Cir. 2000).

bifurcation of the third count of the complaint, we would expect the enhancement listed on this same abstract to be coded "3B."    Likewise, as the government argues in the alternative, if the "A" in the "3A" relates to the case number in the corner box, we would expect the enhancement to be coded "3A."  But the enhancement is coded "3" with no letter appended, casting significant doubt on both of the government's theories.

While the government's theories are certainly plausible, just as plausible is that the "A" in "3A" stands for "amended."  Indeed, the record suggests that count 3 might have been amended beyond even the written amendment in the administrative record.  The San Francisco IJ noted that "there is a disconnect between . . . the charging document and the abstract because the counts don't correspond."  By way of explaining why this might be, the IJ went on to speculate that "there must have been a super[s]eding charging document at some time."  The DHS attorney seemed to agree, saying, "We need to get the super[s]eding indictment."  Moreover, because California allows for indictments to be amended orally in open court, *see People v. Sandoval*, 43 Cal. Rptr. 3d 911, 926–27 (Cal. Ct. App. 2006), there would not necessarily be any written record of a superseding indictment in the state court papers.

Against this backdrop, we are hard-pressed to say that there is a "clear and convincing" link between the "3A" in the abstract and the "3" in the amended complaint.  There are three competing explanations for the extra letter, and none is wholly satisfactory.  And, problematically, this still does not exhaust the ambiguities between the documents.

The docket number on the abstract *also* has an unexplained "A" appended to it. The IJ speculated that this extra letter was the result of a "clerical error." Standing alone, perhaps this would not negate an otherwise clear and convincing showing. But, as we have discussed above, this extra letter is far from the only ambiguity in the purported link between the complaint and the abstract and may also refer to an amended complaint not present in the administrative record.

We note that the record does not contain any serious suggestion that Medina was apprehended with any substance other than one controlled by federal law. But, as we observed above, under *Descamps*, whether Medina actually possessed or purchased, for sale, cocaine "makes no difference." 133 S. Ct. at 2286. We must look only to the *elements* to which Medina pleaded guilty. Because on this record it is not "clear and convincing" that he pleaded guilty to possessing or purchasing, for sale, *cocaine*, the government has not carried its burden of establishing that his § 11351 conviction is an aggravated felony or a controlled substance offense.

## II. The § 12022 Conviction

Medina also challenges the agency's holding that his § 12022 conviction[20] is a firearm offense as that term is

---

[20] The version of § 12022(c) in effect in 2004, the time of Medina's arrest, provides, in relevant part, that "any person who is personally armed with a firearm in the commission of a violation or attempted violation of Section 11351 . . . of the Health and Safety Code, shall be punished by an additional and consecutive term of imprisonment in the state prison for three, four, or five years."

defined by 8 U.S.C. § 1227(a)(2)(C).[21]   Here, unlike the § 11351 conviction discussed above, the agency stopped at the first step of the *Taylor-Descamps* analysis, holding that the statute of conviction is a categorical match to the generic offense.

For this proposition, the agency relied on *Gil v. Holder*, 651 F.3d 1000 (9th Cir. 2011).  Indeed, *Gil* seems on point, and if *Gil* were still good law, it would appear to preclude Medina's challenge.  Recognizing this, Medina directs us to our recent decision in *United States v. Aguilera-Rios*, 754 F.3d 1105, 1112 (9th Cir. 2014), which holds that *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), overruled *Gil*. The government contends that *Aguilera-Rios* does not control the outcome here.

Medina has the better argument.  The issue in *Gil* was whether California's definition of "firearm" was a categorical match to the federal definition.  The INA expressly excludes "antique firearms" from the generic definition of a "firearm." *See* 8 U.S.C. § 1227(a)(2)(C) (incorporating into this provision the definition of "firearm" located at 18 U.S.C. § 921(a)); 18 U.S.C. § 921(a)(3) ("The term 'firearm' . . . . does not include an antique firearm.").  At the time of his conviction, the term "firearm" in § 12022 was defined by former California Penal Code § 12001(b), which does *not*

---

[21] The government argues Medina did not administratively exhaust this argument.  Because the Board clearly addressed it, so, too, may we.  *Kin*, 595 F.3d at 1055.  Even if *Kin* were not the law, Medina's pro se brief specifically incorporated into it the arguments presented in a prior filing, which challenges the agency's legal conclusion that the § 12022 conviction is a firearms offense.

exclude antique firearms.**22**      Thus, a plain language comparison of the statutes would suggest that § 12001(b) is overbroad.

However, the Board had determined in *Matter of Mendez-Orellana*, 25 I. & N. Dec. 254, 255–56 (BIA 2010), that the antique firearm exception was an affirmative defense to removability, and *Gil* accepted that reading of the statute. Because recourse to a hypothetical affirmative defense (i.e., one not actually advanced in the underlying proceeding) may not necessarily impact a subsequent court's *Taylor* analysis of a statute of conviction, *Gil* held that California's definition of a firearm categorically matched the federal definition. *Cf. Aguilera-Rios*, 754 F.3d at 1115 n.4 ("We are not holding that *Gil*'s distinction between affirmative defenses and elements of a crime is invalid for all categorical analyses. Rather, we read *Moncrieffe* as applying particularly to definitional provisions, and as holding that as to such provisions, the allocation of the burden of proof is not relevant to a categorical analysis.").

*Aguilera-Rios* holds that *Moncrieffe* implicitly rejects *Gil*'s analysis and mandates the conclusion that California's firearm definition is overbroad. 754 F.3d at 1114. We do not repeat *Aguilera-Rios*'s reasoning, here; as a three-judge panel, our task is to determine whether it binds us, or if, as the government suggests, *Aguilera-Rios* is distinguishable. We hold that *Aguilera-Rios* applies to any California statute based on the definition of "firearm" formerly appearing at

---

**22** In 2004, § 12001(b) read: "As used in this title, 'firearm' means any device, designed to be used as a weapon, from which is expelled through a barrel a projectile by the force of any explosion or other form of combustion."

§ 12001(b). Although the underlying conviction in *Aguilera-Rios* was obtained under former California Penal Code § 12021(c)(1), that statute incorporates by reference the same definition of "firearm" as does § 12022(c), the statute of Medina's conviction. This is sufficient to bind us to *Aguilera-Rios*'s holding.

The government argues that there is only a "theoretical possibility" and not a "realistic probability" that California would prosecute an individual under § 12022(c) where the firearm in question was antique. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). To support this argument, the government points to the absence of any reported California case upholding a § 12022(c) conviction based on possession of an antique firearm. By contrast, Medina notes that § 12022(c) simply incorporates by reference the definition of firearm appearing at former § 12001(b), and that there are a good many cases in which California obtained a conviction based on that definition in which the firearm in question was antique.

Medina is correct that our inquiry must focus on California's interpretation of former § 12001(b) rather than convictions based on § 12022(c). No conviction could have arisen under former § 12001(b), because it simply defined the term "firearm" as used in Title 2 of Part 4 of the California Penal Code. Other statutes in that Title criminalize conduct. It does not matter if the conduct is criminalized by former § 12021(c)(1), as in *Aguilera-Rios*; by § 12022(c), as here; or by former § 12025(a), as in *Gil*. Because the common link in these cases is the § 12001(b) definition of firearm, our analysis should center on that statute. Indeed, the agency implicitly conceded as much when it cited *Gil* to sustain the firearms charge against Medina. Because *Gil* analyzed

§ 12025(a), the Board could have applied it to Medina's case only if *Gil*'s holding was rooted in the definition appearing at former § 12001(b).

Having framed the inquiry correctly, Medina's challenge easily passes the *Duenas-Alvarez* bar. California obviously prosecutes individuals for firearm crimes arising under the former § 12001(b) definition even when the firearm in question is antique. *Aguilera-Rios* cites several appellate cases from the past decade in which California courts held that, as for example, a "replica muzzle-loading pistol," a "family heirloom replica single-shot muzzle-loading rifle incapable of using modern ammunition," and a "black powder, muzzle-loading firearm," are firearms within the meaning of former § 12001(b). *Aguilera-Rios*, 754 F.3d at 1114 (internal quotation marks and citations omitted); *see also, e.g.*, *People v. McGraw*, C041322, 2004 WL 928379 (Cal. Ct. App. 2004) (unpub.) (sustaining conviction where firearm was century-old, disassembled antique revolver). These recent examples of California prosecutions demonstrate a "realistic probability" that California may obtain a conviction based on the § 12001(b) definition even where the firearm in question is antique. Thus, because § 12001(b) is overbroad, the Board's conclusion that § 12022 is categorically a firearm offense cannot stand.

Although the agency did not assess the divisibility of former § 12001(b), we may proceed to do so without first remanding to the Board. Divisibility is a purely legal question which does not require any additional fact-finding. *Cf. Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1080 (9th Cir. 2007) (declining remand where no further fact-finding remains to be done). We owe no deference to the Board's interpretation of a criminal statute it does not administer, *see*

*Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1133 (9th Cir. 2006) (en banc), meaning that if we remanded to the Board to determine whether former § 12001(b) is divisible, we would review that conclusion de novo rather than under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *Mandujano-Real v. Mukasey*, 526 F.3d 585, 589 (9th Cir. 2008). In short, the interests of judicial and administrative economy dictate that we consider divisibility at this juncture.

Former § 12001(b) is indivisible. As we discuss above, the statute does not even mention antique firearms. Like California Penal Code § 459, the statute analyzed in *Descamps*, former §§ 12001(b) and 12022, when read together, clearly criminalize a swath of conduct not contemplated by the generic offense. This is not a situation where the statute "effectively creates 'several different crimes,'" *Descamps*, 133 S. Ct. 2285 (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)), where "at least one, but not all of those crimes matches the generic version." *Id.* As in *Descamps*, there is "a simple discrepancy between [the] generic [crime] and the crime established in" the statute of conviction. *Id.* This renders the statute indivisible and thus outside the "narrow range of cases" in which the modified categorical approach can be employed. *Id.* at 2283 (quoting *Taylor*, 495 U.S. at 602). Accordingly, as a matter of law, we hold that Medina's § 12022 conviction is not a predicate for removal under 8 U.S.C. § 1227(a)(2)(C).

## III. Disposition of the Petition

Finally, we must consider how to dispose of this petition. To recap, because we have determined that, as a matter of law, Medina's convictions under § 11351 and § 12022 are not

predicate offenses for removal under the INA, there is no reason to remand on those counts. There remains, however, the matter of Medina's § 11377 conviction.

Medina asks that we remand with instructions to terminate the removal proceedings outright. This would be contrary to our ordinary practice of remanding for further proceedings consistent with our disposition, leaving to the agency's discretion how to proceed (subject, of course, to subsequent judicial review). *See generally Fernandez-Ruiz*, 466 F.3d at 1133 (discussing remand rule). However, for a number of factors this is the rare case where remand is inappropriate.

First, the government's charge of removability based on the § 11377 conviction suffers the same legal defect as the agency's decision to order removal based on the § 11351 conviction: There is no clear and convincing evidence in the record linking the abstract of judgment and the charging document. While the 2007 complaint alleges that Medina possessed methamphetamine, the abstract lists "poss cont sub" as the crime of conviction. Unlike in *Cabantac*, where the key word "methamphetamine" linked the abstract and the charging document, 736 F.3d at 792–93, here, that crucial link is missing. Where, as here, only purely legal issues remain, it "would serve no purpose" to remand to the agency. *Karimi v. Holder*, 715 F.3d 561, 565 (4th Cir. 2013); *see also Ruiz-Vidal*, 473 F.3d at 1080 (declining remand in similar situation).

Second, the government has not suggested how it would cure this deficiency on remand. In the initial round of proceedings, the San Francisco IJ gave the government fair warning that it had a flimsy record in this case. Anticipating

the eventual need to turn to the modified categorical approach, the IJ granted many continuances, several of which were for the express purpose of allowing the government to supplement the record. And while the government could have introduced additional evidence before the Tacoma IJ, it did not do so. The government's failure over the course of several years to produce any *Shepard*-compliant documents relevant to the § 11377 conviction suggests its ultimate inability to do so. *Cf. Ruiz-Vidal*, 473 F.3d at 1080 (declining to remand where "the record on remand would consist only of those documents already in the record").

Third, we note that in its 2010 order the Board affirmed the San Francisco IJ's determination that the § 11377 conviction rendered Medina removable. The Board's subsequent *sua sponte* reopening of the case vacated that order, *Plasencia-Ayala v. Mukasey*, 516 F.3d 738, 745 (9th Cir. 2008), *overruled on other grounds by Marmolejo-Campos v. Holder*, 558 F.3d 903, 911 (9th Cir. 2009) (en banc), and so it is not before us today. We do not know why the agency, which once believed that the § 11377 conviction was sufficient to order removal, decided to ignore that conclusion in the second round of administrative proceedings. But it is clear that DHS has had ample opportunity to build the record. Two different IJs and the Board have considered the § 11377 conviction, but ultimately did not rest their decision upon that ground. The government has given us no reason to provide it a "third bite at the apple," *Siwe v. Holder*, 742 F.3d 603, 611–12 (5th Cir. 2012) (internal brackets omitted) (quoting *Zhu v. Gonzales*, 493 F.3d 588, 602 (5th Cir. 2007)), especially since it *has* considered the issue, *see Pascua v. Holder*, 641 F.3d 316, 319 (9th Cir. 2011) (denying remand where agency had considered a potentially dispositive issue twice previously).

Fourth, under our case law, the government is precluded from relitigating the § 11377 issue. In the immigration context, a party is precluded from relitigating an issue where "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012). Here, the government put the § 11377 issue at stake when it charged Medina with removability on the basis of that conviction. The issue was actually litigated before the San Francisco IJ, before the Board in 2010, and then again before the Tacoma IJ, all while Medina remained in DHS detention. Furthermore, for the reasons described above, the government has had a full opportunity to litigate the immigration consequences of the § 11377 issue. And finally, whether Medina's § 11377 conviction is a removable offense is obviously necessary to determine his ultimate removability. With these factors in mind, we hold the government is precluded from relitigating the § 11377 issue.

## CONCLUSION

The government has failed to carry its burden to show by clear and convincing evidence that Medina has been convicted of an aggravated felony or a controlled substance offense. Similarly, Supreme Court case law issued subsequent to the agency action reviewed here has foreclosed on the government's contention that Medina had been convicted of a firearm offense. Because a substantive remand is inappropriate for the reasons stated above, we GRANT

Medina's petition for review, VACATE the removal order, and REMAND to the agency with the instruction that it grant Medina's motion to terminate proceedings.

**PETITION GRANTED, VACATED and REMANDED with instructions.**