**NOT FOR PUBLICATION**

**FILED**

MAY 2 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ATINDERPAL SINGH,

          Petitioner,

    v.

MERRICK B. GARLAND, Attorney
General,

          Respondent.

No. 21-1104

Agency No.
A206-080-228

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 10, 2023
San Francisco, California

Before: PAEZ, CLIFTON, and H.A. THOMAS, Circuit Judges.
Dissent by Judge CLIFTON.

Atinderpal Singh, a native and citizen of India, petitions for review of the

Board of Immigration Appeals' ("BIA") dismissal of his appeal of an

Immigration Judge's ("IJ") decision denying his applications for asylum,

withholding of removal, and relief under the Convention Against Torture

("CAT").  The BIA further denied his application for humanitarian asylum.  We

have jurisdiction under 8 U.S.C. § 1252.  We grant the petition.

---

    [*]    This disposition is not appropriate for publication and is not
precedent except as provided by Ninth Circuit Rule 36-3.

"Where, as here, the BIA agrees with the IJ's reasoning, we review both decisions." *De Leon v. Garland*, 51 F.4th 992, 999 (9th Cir. 2022) (citation omitted); *see also Medina-Lara v. Holder*, 771 F.3d 1106, 1111 (9th Cir. 2014) (referring to the IJ and BIA "collectively as 'the agency'"). We review the BIA's interpretation of legal questions de novo and the factual findings underlying the agency's determination for substantial evidence. *De Leon*, 51 F.4th at 999. The agency's conclusions are supported by substantial evidence "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Garland v. Ming Dai*, 141 S. Ct. 1669, 1677 (2021) (quoting 8 U.S.C. § 1252(b)(4)(B)).

1. The agency concluded that Singh failed to demonstrate past persecution based on his political membership in the Shiromani Akali Dal Amritsar ("Mann") Party. *See Antonio v. Garland*, 58 F.4th 1067, 1073 (9th Cir. 2023) (stating elements of past persecution). Singh testified before the IJ that, in 2013, he experienced two attacks by Indian Congress Party members. During both incidents, his attackers beat him because he supported the Mann Party, threatened him with death, and caused him to require medical treatment. Although he requested assistance from the police after each incident, he was denied help and accused of lying. The agency found Singh credible but denied his asylum application because it did not find that his past harm constituted

2

persecution[1] or that the government was unwilling or unable to control his attackers. Both reasons are erroneous.

First, "when determining whether a petitioner's past mistreatment rises to the level of persecution, the BIA must apply cumulative-effect review." *Salguero Sosa v. Garland*, 55 F.4th 1213, 1218–20 (9th Cir. 2022) (discussing the requirements of a "cumulative-effect review" in assessing past persecution). Accordingly, we have held that the record compels the conclusion that a petitioner's treatment rises to the level of persecution when he is targeted for his political views, threatened with death, physically assaulted, and compelled to flee his home. *See Singh v. Garland*, 57 F.4th 643, 657 (9th Cir. 2022) (involving a Mann Party petitioner that was attacked twice by Congress Party members); *cf. Aden v. Wilkinson*, 989 F.3d 1073, 1082 (9th Cir. 2021) (explaining physical harm may compel a finding of persecution when paired with "*something more*, such as credible death threats"). Here, on two occasions, Singh required medical attention after being targeted, beaten, and threatened with death by Congress Party supporters based on his political membership.[2]

---

[1] As noted in *Antonio*, "the standard of review for past persecution is currently unsettled." *Id.* at 1072 n.8. We need not further address the dispute because Singh's "harm amounts to persecution even under the more deferential 'substantial evidence' standard." *See id.* (comparing cases).

[2] The dissent asserts that Singh was not sufficiently clear in detailing the severity of his injuries. This is contradicted by the record. As the BIA noted, Singh suffered "bruises" and "body aches" from both of the attacks, "a cut on his hand" from the second attack, and obtained medical treatment after each attack. Indeed, where the IJ found the petitioner credible, we defer to the IJ's

The cases cited by the agency and dissent on this issue are distinguishable because they do not involve "multiple instances of physical violence coupled with a death threat," *see Singh*, 57 F.4th at 655; *see, e.g.*, *Gu v. Gonzales*, 454 F.3d 1014, 1017–18 (9th Cir. 2006) (finding no past persecution where petitioner was involved in a singular incident without a death threat).

Second, the record indicates that government forces—here, the police— "[were] unable or unwilling to control" Singh's attackers. *See Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062 (9th Cir. 2017) (en banc) (citation omitted). The agency failed to evaluate "all relevant evidence in the record." *See id.* at 1069 (citation omitted). Despite finding Singh credible, the agency wrongfully discounted his testimony that the police "did not listen" to him, instead refusing to take a police report and calling him a liar after he reported the two attacks and showed them his injury. Such evidence can demonstrate that the government is unable or unwilling to control attackers. *See Doe v. Holder*, 736 F.3d 871, 879 (9th Cir. 2013) (so finding where petitioner "presented evidence that the . . . police rejected his first complaint . . . and subsequently dismissed his second complaint without doing anything more than interviewing him."). To the extent the agency and dissent found this testimony vague, any reasonable adjudicator would be compelled to disagree. The testimony before the IJ, when put in context, indicates Singh told the police the

___

determination despite any minor omissions or potential speculation in the petitioner's testimony. *See Singh*, 57 F.4th at 652.

4

same narrative that he told the IJ—which it found credible. Moreover, the police attacked and arrested Singh's father on account of his Mann Party membership. This, combined with country conditions evidence showing that Indian police discriminate against Mann Party members, further supports the conclusion that the police were unwilling to control Singh's attackers because of his political affiliation. *See Mashiri v. Ashcroft*, 383 F.3d 1112, 1121 (9th Cir. 2004) (holding that the record compelled the finding that the government was unwilling or unable to control violence against foreigners when officials "flatly refused" to help, police "quickly closed" an investigation, and police expressed anti-foreigner statements).

In sum, Singh has shown that he suffered past persecution on account of a protected ground at the hands of those the government was unable or unwilling to control. He is therefore presumed to have a fear of future persecution and the government bears the burden to rebut that presumption. *See Singh*, 57 F.4th at 657. We remand for the BIA to determine whether the government can do so. *Id.* (stating elements of future persecution). Because the BIA's internal relocation finding placed the burden on Singh, we remand so the BIA may "conduct a thorough, individualized analysis of [Singh's] ability to relocate internally," this time "placing the burden on the government." *See id.* at 658 (citation omitted).

2. The agency concluded that because Singh did not show he was eligible for asylum, he was not eligible for withholding of removal. The same issues

that require remand of the asylum claim thus require remand of the withholding claim.

3. The BIA denied Singh's humanitarian asylum claim. *See Singh v. Whitaker*, 914 F.3d 654, 661–62 (9th Cir. 2019) (stating elements of a humanitarian asylum claim). Because Singh's humanitarian asylum claim requires him to show, in relevant part, past persecution or "a reasonable possibility that [he] may suffer other serious harm upon removal" to India, *id.* (quoting 8 C.F.R. § 1208.13(b)(1)(iii)), we remand for the BIA to reconsider this issue on the same grounds outlined above.

4. The agency denied Singh's CAT claim on the ground that he failed to show the Indian government would torture him or acquiesce in any torture committed by third parties. *See Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183–84 (9th Cir. 2020) (stating elements of a CAT claim). Because Singh's CAT claim relies on the same evidence as his asylum and withholding of removal claims, we also remand for the BIA to reconsider this claim. *See, e.g.*, *Bringas-Rodriguez*, 850 F.3d at 1076 (remanding CAT claim after determining petitioner suffered past persecution).

Each party shall bear its own costs for this petition for review.

**GRANTED AND REMANDED.**

*Singh v. Garland*, 21-1104

CLIFTON, Circuit Judge, dissenting:

I respectfully dissent. "To reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it." *Dong v. Garland*, 50 F.4th 1291, 1300 (9th Cir. 2022) (citation and alteration omitted). The majority reverses the finding of the agency that Singh failed to establish that he suffered past persecution on account of a protected ground, but the evidence does not compel the majority's conclusion.

To begin, substantial evidence supports the agency's conclusion that Singh failed to demonstrate his harm amounted to past persecution. Although the IJ found Singh credible, the BIA noted that he "did not describe in any significant detail the extent of his injuries" related to the two 2013 attacks. The record supports this finding, and because Singh's testimony was vague and speculative, I am not compelled to find past persecution. *See Gu v. Gonzales*, 454 F.3d 1014, 1017–18, 1021 (9th Cir. 2006) (denying a petition for review in which the BIA found no past persecution even though the petitioner was "detained at a police station for three days" and beaten "approximately ten times," but "required no medical treatment"); *cf. Shrestha v. Holder*, 590 F.3d 1034, 1040 (9th Cir. 2010) (noting that the "level of detail" in a petitioner's testimony is relevant to evaluating credibility).

1

Even assuming Singh experienced sufficient harm, he failed to show the harm "was committed by . . . forces that the government was unable or unwilling to control." *See Antonio v. Garland*, 58 F.4th 1067, 1073 (9th Cir. 2023) (quoting *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062 (9th Cir. 2017) (en banc)). The record does not show that Singh provided the police with "sufficiently specific information to permit an investigation" or to arrest his attackers. *See Doe v. Holder*, 736 F.3d 871, 878 (9th Cir. 2013). Because Singh failed to provide the police with crucial details, including the political affiliation of his attackers and circumstances surrounding the two attacks, the police's failure to investigate does not show the government was unable or unwilling to protect him. *Cf. Singh v. I.N.S.*, 134 F.3d 962, 968 (9th Cir. 1998) (stating that the police responded to petitioner, but "took no further action" perhaps "due to a lack of suspects, few leads, etc.").

Moreover, substantial evidence supports the agency's conclusion that Singh failed to demonstrate a well-founded fear of future persecution. *See Sharma v. Garland*, 9 F.4th 1052, 1065 (9th Cir. 2021) (noting that a petitioner may show a well-founded fear of future persecution even if a petitioner fails to show past persecution). I am not compelled by the record to conclude that Singh would be unable to relocate internally in India. *See I.N.S. v. Orlando Ventura*, 537 U.S. 12, 18 (2002) (stating that an applicant's ability to safely relocate to another part of his

2

home country renders asylum unavailable).  First, the record does not demonstrate that Singh would be viewed as a traitor by the Indian government upon his return. The agency properly relied upon country condition evidence to show the Indian government is unlikely to misuse biometric data under the guise of national security.  Second, the record affirms the agency's conclusion that Singh's relocation to a community within India and away from his attackers would be as, if not less, burdensome as relocation to the United States.  *See* 8 C.F.R. § 1208.13(b)(1)(i)(B) (stating standard).  Accordingly, Singh is not eligible for asylum based on past persecution or a well-founded fear of future persecution.

The agency therefore properly denied Singh's withholding of removal and humanitarian asylum claims on similar grounds as his asylum claim—making remand unnecessary.  *See Sharma,* 9 F.4th at 1066 (holding failure to meet the "lesser burden" of asylum eligibility results in failure to meet the withholding burden) (citation omitted); *Singh v. Whitaker*, 914 F.3d 654, 661–62 (9th Cir. 2019) (noting humanitarian asylum requires either "past persecution" or "a reasonable possibility that he . . . may suffer other serious harm upon removal to that country" (quoting 8 C.F.R. § 1208.13(b)(1)(iii))).

Similarly, remand is not needed where substantial evidence supports the agency's denial of CAT protection.  Torture is "an extreme form of cruel and inhuman punishment" that is "more severe than persecution" and must be

"inflicted by or at the instigation of or with the consent or acquiescence of a public official." *Salguero Sosa v. Garland*, 55 F.4th 1213, 1221–22 (9th Cir. 2022) (internal citations omitted). Singh testified that Congress Party supporters beat and kicked him, threatened him with death, and caused him to require medical treatment. Such harm, if fully credited, is serious but does not rise to the level of torture. And, because Singh did not show that Indian authorities would be unable or unwilling to protect him, the record cannot support a clear probability of torture with the acquiescence of the government. Thus, the evidence does not indicate "*a particularized threat of torture*" to Singh. *See Lalayan v. Garland*, 4 F.4th 822, 840 (9th Cir. 2021) (citation omitted).

For these reasons, I would deny the petition.