**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-5046

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

ENRIQUE MARENTES VARGAS, a/k/a Enrique Vargas, a/k/a
Enrique Merentes-Vargas,

             Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.  Richard L. Williams, Senior
District Judge.  (3:09-cr-00086-RLW-1)

Argued:  December 10, 2010       Decided:  January 25, 2011

Before AGEE and DAVIS, Circuit Judges, and David A. FABER,
Senior United States District Judge for the Southern District of
West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Mary Elizabeth Maguire, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Richmond, Virginia, for Appellant.  Stephen David
Schiller, OFFICE OF THE UNITED STATES ATTORNEY, Richmond,
Virginia, for Appellee.  **ON BRIEF:** Michael S. Nachmanoff,
Federal Public Defender, Alexandria, Virginia, for Appellant.
Neil H. MacBride, United States Attorney, Alexandria, Virginia,
for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Enrique Marentes Vargas was convicted of illegal reentry into the United States under 8 U.S.C. § 1326, which punishes any deported alien who, without proper authorization, "enters, attempts to enter, or is at any time found in, the United States." The statute of limitations for such an offense is five years. 18 U.S.C. § 3282. Vargas contends that his prosecution is barred by limitations. We disagree and affirm.

## I.

As explained below, Vargas contends limitations began to run in 2001 (more than five years before his 2009 indictment), when he and his employer filed an I-140 Petition for Alien Worker and an Application for Alien Employment Certification. These documents included Vargas's true name and birth date but failed to report his Alien Number and the fact that he had been deported previously. Vargas argues that with reasonable diligence the authorities should have discovered then that he had reentered the United States illegally, and thus that he was, at that time, "found in" this country by immigration authorities within the meaning of § 1326(a)(1). The Government responds with two arguments. First, it urges that because § 1326 criminalizes a former deportee's unauthorized <u>presence</u> in this country, i.e., continuing conduct, essentially, prosecution for such an offense

3

can never be barred by limitations while the deportee remains in the country, because the limitations period does not commence to run until an alien is arrested by federal authorities. See United States v. Merentes-Vargas, 2009 WL 1587291, *6 (E.D.Va. June 5, 2009) (collecting cases) (opinion below). Second, the Government argues in the alternative that, as the district court found, Vargas's I-140 form was deceitful and failed to give sufficient notice to the immigration authorities of Vargas's illegal reentry to trigger the running of the five-year limitations period.

We conclude that the district court's finding in this latter regard is not clearly erroneous; accordingly, we affirm the judgment.

A.

Vargas is a citizen of Mexico. His true name is in dispute, though the district court accepted his claim that his true name is Enrique Marentes Vargas. Likewise, there exists a question as to his birth date, which the district court found to be July 15, 1964. He illegally entered the United States sometime before August 1995, when he was convicted in California state court for selling marijuana. He was first arrested by federal immigration officials on April 20, 1998 in Omaha, Nebraska.

In connection with the 1998 arrest, federal officers: (1) assigned Vargas an Alien Number; (2) obtained Vargas's

4

fingerprints and his photograph; and (3) obtained certain personal information from Vargas. They entered the information into a Record of Deportable/Inadmissible Alien. This document listed Vargas's name as "Enrique Merentes-Vargas" (rather than "Enrique Marentes Vargas") and his date of birth as "July 15, 1961" (not July 15, 1964). J.A. 62. The Government contended in the court below that Vargas was using an alias and giving incorrect information, but the district court, rejecting this contention, found "that there is no evidence that he has concealed his identity with an alias," but rather that "he has consistently used his true name." J.A. 68. The court found the discrepancies in the Record were "most likely" due to a ministerial error. J.A. 68. The Record also lists Vargas's home state as Zacatecas, Mexico, and his employer as R.L. Craft Roofing in Omaha, Nebraska.

Vargas was removed to Mexico on May 14, 1998 after being served with an I-294 form, which included his Alien Number, advising him of the penalties of illegal reentry.

B.

By February 1999, Vargas had reentered the United States without authorization and was working as a roofer for Carey Oakley & Co. in Sandston, Virginia. In July 1999, he was convicted of assault and battery, but state officials did not notify federal officials of Vargas's presence. On November 30,

5

2001, Carey Oakley & Co. filed an I-140 Petition for Alien Worker on Vargas's behalf. Vargas also completed an Application for Alien Employment Certification, which was sent with the I-140 petition to the Immigration and Naturalization Service (INS). These documents listed Vargas's true name and birth date, his birthplace as Zacatecas, Mexico, and his prior employment at R.L. Craft Co. of Omaha, Nebraska (whom he indicated he had worked for between July 1995 and June 1998). These documents did not ask about prior deportation or convictions, although the I-140 petition did ask for an "A# [Alien Number] if any." This field was left blank despite the fact that, as just mentioned, Vargas had been assigned an Alien Number when he was deported after his 1998 arrest in Nebraska. J.A. 63-64. Immigration authorities approved Vargas's I-140 petition in 2002.

### C.

Five years later, in August 2007, Vargas filed an I-485 Application for Lawful Permanent Residency. He falsely claimed in that application that he had not been assigned an Alien Number and that he not been deported or removed from the country previously. The application was pending at the time of the proceedings in the district court.

In February 2009, Vargas was arrested for robbery in Chesterfield County, Virginia. Immigration and Customs Enforcement (ICE) officials were notified of the arrest, ran

6

Vargas's fingerprints, and thereby linked him to his 1998 immigration records. J.A. 65. On March 17, 2009, a federal grand jury returned a one-count indictment charging Vargas with being found in the United States after having been previously deported subsequent to conviction for a felony, in violation of 18 U.S.C. § 1326. Vargas pled not guilty and filed a motion to dismiss the indictment on the ground that the prosecution was time-barred for the reasons he argues here.

D.

The district court found that Vargas was not "found" in the United States in 2001 upon the filing of the I-140 petition because his omission of his Alien Number "was deceptive," J.A. 68, and more importantly that this omission, coupled with the incorrect name and birth date in the 1998 records, "prevented immigration authorities from discovering" that Vargas had illegally reentered the United States until his 2009 arrest in Virginia. J.A. 69. Thus, the district court denied the motion to dismiss.

In due course, Vargas entered a conditional guilty plea, preserving his right to appeal the issue of limitations. Vargas brought such a timely appeal, and we review his conviction pursuant to 28 U.S.C. § 1291.

7

II.

The application of 18 U.S.C. § 3282's limitations period to illegal reentry charges brought under 8 U.S.C. § 1326 is a question of law, which we review de novo. See United States v. Uribe-Rios, 558 F.3d 347, 351 (4th Cir. 2009); United States v. McGowan, 590 F.3d 446, 456 (7th Cir. 2009)("We review de novo the district court's denial of a motion to dismiss based on statute-of-limitations grounds, deferring to the district court's factual determinations.").

Title 8, § 1326 of the United States Code subjects to punishment

> any alien who— (1) has been . . . deported . . . and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act.

The governing statute of limitations is 18 U.S.C. § 3282, which mandates that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." An offense is "committed,"

8

and the statutory period begins to run, when an offense is "complete." <u>Toussie v. United Sates</u>, 397 U.S. 112, 115 (1970).

Seven of the eight courts of appeals to determine the proper interpretation of § 1326's "found in" clause as it relates to the five-year statute of limitations period have held or strongly intimated, by application of a "constructive knowledge" principle, that the statutory period begins to run when immigration authorities know of defendant's physical presence and "either know of or, with the exercise of diligence typical of law enforcement authorities, could have discovered the illegality of the defendant's presence." <u>United States v. Palomino Garcia</u>, 606 F.3d 1317, 1323 (11th Cir. 2010) (internal quotation marks omitted); <u>accord</u> <u>United States v. Villarreal-Ortiz</u>, 553 F.3d 1326, 1329-30 (10th Cir. 2009); <u>United States v. Santana-Castellano</u>, 74 F.3d 593, 598 (5th Cir. 1996); <u>United States v. Rivera-Ventura</u>, 72 F.3d 277, 280 (2d Cir. 1995); <u>United States v. Gomez</u>, 38 F.3d 1031, 1037 (8th Cir. 1994); <u>see also</u> <u>United States v. Hernandez</u>, 189 F.3d 785, 789-90 (9th Cir. 1999) (relying on majority of circuits' interpretation); <u>United States v. DiSantillo</u>, 615 F.2d 128, 132-37 (3d Cir. 1980) ("[T]he alien is 'found' when his presence is first noted by the immigration authorities."). The Seventh Circuit, in contrast, has held, "[c]ontrary to our sister circuits . . . that when the government 'should have discovered' a deportee's illegal

9

presence in the United States is irrelevant to when the statute of limitations begins to run . . . ." United States v. Gordon, 513 F.3d 659 (7th Cir. 2008). The Gordon court further held that, questions of constructive knowledge aside, the Government's actual knowledge that a formerly deported alien had illegally reentered the country would not trigger the five-year statute of limitations, since the alien's illegal presence in the States would constitute a continuing violation of § 1326. Id. at 664-65.

In Uribe-Rios, we affirmed the denial of a motion to dismiss a § 1326 prosecution on the ground of limitations. Specifically, we refused the appellant's invitation to impute state officers' knowledge of an alien's presence in the United States to federal immigration authorities, 558 F.3d at 352-53. Furthermore, we observed that even if a constructive knowledge theory might be deemed to apply in that case, it would not have availed the appellant. Id. at 354-55.

We are satisfied that in the case at bar, as the district court concluded, a constructive knowledge theory would not benefit Vargas. The district court found that Vargas's omission of his Alien Number on his I-140 petition "was deceptive." J.A. 68. More important, the court found that Vargas's "failure to provide his Alien Number on the I-140 petition when it was completed in 2001, combined with the incorrect identifying

10

information entered onto the 1998 Record, <u>prevented immigration authorities from discovering</u> that the defendant had entered after a previous deportation." J.A. 69 (emphasis added). Thus, the district court's findings make clear that federal authorities could not have discovered, with the exercise of diligence typical of law enforcement, that Vargas had reentered the country illegally at the time he submitted the I-140 petition more than five years prior to his indictment in this case.

Vargas has presented no persuasive evidence the court's findings were clearly erroneous. He argues merely that the similarity of information contained in the I-140 petition and the 1998 Record of Deportable/Inadmissible Alien should have been enough to trigger constructive knowledge. Both documents name R.L. Craft Co. of Omaha, Nebraska as an employer, list Vargas's place of birth as Zacatecas, Mexico, and contain similar names and dates of birth. But Vargas proffered no evidence that would show that these overlaps would be enough to alert a reasonably diligent immigration official to the fact that he had been previously deported, for instance, evidence that a typical search against all federal immigration databases in 2001-02 would have flagged the 1998 form as a possible match to the I-140 petition.

Vargas strenuously argues that he "has done nothing to hide himself from immigration officials" and that the "omission of an Alien Number . . . does not rise to the level of deception contemplated by this Court in Uribe-Rios." Br. of Appellant, at 10-11. But the innocence of the omission is irrelevant to determining whether federal immigration officials, exercising that diligence typical of law enforcement, should have discovered the illegality of Vargas's presence.

## III.

As there is no support in the record to believe that even the most careful and capable immigration official would have known to compare the I-140 petition to the 1998 documents, we are bound to accept the district court's finding that the authorities could not have discovered Vargas's illegal reentry in 2001-02. Consequently, the district court correctly found that Vargas's prosecution was not time-barred. Accordingly, the judgment is

AFFIRMED.