**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

HERMILO PALMERIN ZAMUDIO,
AKA Hermilo Zamudio
Palmerin,
*Defendant-Appellant*.

No. 13-10322

D.C. No.
3:12-cr-00532-WHA-1

ORDER AND
AMENDED OPINION

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted
September 9, 2014—San Francisco, California

Filed January 14, 2015
Amended May 7, 2015

Before: J. Clifford Wallace, Mary M. Schroeder,
and John B. Owens, Circuit Judges.

Order;
Opinion by Judge Wallace

# SUMMARY[*]

## Criminal Law

The panel (1) amended an opinion filed January 14, 2015, affirming a conviction for violating 8 U.S.C. § 1326, which prohibits a deported alien from being "found in" the United States after reentering without permission; and (2) denied a petition for panel rehearing.

The panel held that the district court correctly concluded that the defendant failed to meet his burden in collaterally attacking his underlying deportation proceeding.  The panel observed that kidnapping in violation of California Penal Code § 207(a) is categorically a crime of violence for which the defendant was removable based on his 1994 conviction; and that the defendant's attorney's admission that his 2000 conviction was for methamphetamine possession and that the defendant was therefore removable satisfied the government's burden regarding removability.  The panel held that even if the immigration judge erred in failing to advise the defendant of his ability to apply for relief from removal, the defendant suffered no prejudice because if he had obtained relief from removal for his 1994 conviction under 8 U.S.C. § 1182(c), that would have rendered him ineligible for relief from removal for his 2000 conviction under 8 U.S.C. § 1229b(c)(6).  The panel rejected the defendant's contention that his attorney's admission regarding the 2000 conviction was the result of ineffective assistance of counsel.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Rejecting the defendant's contention that the district court erred in failing to instruct the jury on a constructive knowledge theory for the defendant's statute of limitations defense, the panel held that the defendant's "found in" offense under § 1326 was not complete – and therefore the statute of limitations did not begin to run – when the defendant reentered in 2001 because his presentation of an invalid green card as if it were valid did not place authorities on notice that the defendant's presence in the United States would be illegal. On the facts of this case, the panel did not need to reach the question of whether constructive knowledge can or should be imputed to the government when a defendant leaves accurate information with the government from which it could be determined that the defendant is in the country illegally.

## COUNSEL

Erick L. Guzman (argued), Law Office of Erick L. Guzman, Santa Rosa, California, for Defendant-Appellant.

Laurie Kloster Gray (argued) and Susan B. Gray, Assistant United States Attorneys, Melinda Haag, United States Attorney, Barbara J. Valliere, Chief, Appellate Division, San Francisco, California, for Plaintiff-Appellee.

## ORDER

The court's opinion filed January 14, 2015, and appearing at 776 F.3d 672 (9th Cir. 2015), is hereby amended. An amended opinion is filed herewith.

With this amended opinion, the panel has voted to deny the petition for panel rehearing. That petition is therefore **DENIED**. No further petitions for rehearing or rehearing en banc may be filed.

## OPINION

WALLACE, Senior Circuit Judge:

Zamudio was convicted of violating 8 U.S.C. § 1326, which prohibits a deported alien from being "found in" the United States after reentering without permission. Zamudio now appeals from his conviction, arguing that the underlying removal proceeding violated his due process rights, that the district court erred in failing to instruct the jury on a constructive knowledge theory for Zamudio's statute of limitations defense, and that the evidence presented to the jury proved his statute of limitations defense as a matter of law. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I.

Zamudio was born in Mexico and came to the United States as a teenager. He subsequently became a legal permanent resident by virtue of his marriage to a United

States citizen. In 1994 Zamudio pleaded guilty to kidnapping in violation of California Penal Code § 207(a) and was sentenced to three years in prison. In 1999 Zamudio was arrested and charged with felony possession of methamphetamine pursuant to California Health and Safety Code § 11377(a) and with misdemeanor possession of marijuana pursuant to § 11357(b). The marijuana charge was dismissed and Zamudio pleaded guilty to the remaining charge in 2000. Zamudio was sentenced to serve 100 days in jail.

Upon completion of his sentence, Zamudio was taken into custody by the United States Immigration and Naturalization Service (INS). The INS served Zamudio with a Notice to Appear (NTA) which charged that he was removable both because his 1994 conviction for kidnapping was an aggravated felony and because his 2000 conviction for possession of methamphetamine was a violation relating to a controlled substance.

Attorney Donald Smith was retained to represent Zamudio. Smith filed a motion for change of venue, in which he requested permission to appear by telephone. The motion was denied, and another immigration judge (IJ) later held a removal hearing. Zamudio was present, along with a Spanish interpreter, but Smith was not. The IJ contacted Smith by telephone and proceeded with the hearing.

The IJ asked Smith if he was ready to proceed with the case, and Smith said he had not seen the NTA, but that if the IJ would read it to him he could respond on behalf of his client. Smith admitted that Zamudio had no claim to U.S. citizenship and that Zamudio was convicted of methamphetamine possession in 2000 and of kidnapping in

1994; he then conceded that Zamudio was deportable based on each of his convictions. Both the IJ and Smith agreed that there was no relief from deportation available to Zamudio. The IJ then ordered Zamudio removed to Mexico.

Zamudio's second and then-current wife later testified before the district court that she traveled to Mexico several months after Zamudio's removal to bring Zamudio back to the United States. She met Zamudio in Tijuana and brought him his legal permanent resident card, or green card, which was no longer valid following his removal. On Memorial Day weekend in 2001 she drove Zamudio to a United States port of entry where the border agent requested documentation for everyone entering. She provided her driver's license, her birth certificate, and Zamudio's invalid green card. The agent looked at the green card, looked at Zamudio, and returned the documents. Then, after asking whether there was anyone else in the vehicle and checking the vehicle's trunk, the agent waved them forward through the port of entry.

In 2012 Zamudio came to the attention of immigration officials in the United States, this time while he was incarcerated at the Sonoma County Jail. He was subsequently indicted for the instant offense.

Zamudio moved to dismiss the indictment, arguing that the IJ's failure to advise Zamudio that he was eligible to apply for relief from removal rendered his removal order invalid and precluded the government from relying on it as a predicate element for the prosecution. Zamudio also argued, among other things, that he received ineffective assistance of counsel because Smith erred in conceding that Zamudio's drug conviction was for methamphetamine and Smith never

came to visit Zamudio and never explained what was happening.

The district court denied Zamudio's motion to dismiss, concluding that Zamudio could not have successfully contested removability based on either his 1994 conviction for kidnapping or his 2000 conviction for drug possession. The court reasoned that the 1994 kidnapping conviction rendered Zamudio removable because kidnapping was considered a crime of violence at the time of Zamudio's removal hearing, and the 2000 conviction was also a removable offense because Zamudio's counsel had admitted at the removal hearing that the conviction was for possession of methamphetamine. The district court further concluded that any failure to advise Zamudio of his eligibility for relief from removal was not prejudicial because if Zamudio had been granted relief from removal for his 1994 conviction, he would then have been ineligible for relief from removal for his 2000 conviction.

After a two-day trial, the jury was unable to reach a verdict. On re-trial, Zamudio pursued a statute of limitations defense, arguing that the five-year statute of limitations for 8 U.S.C. § 1326 began to run in 2001 when his identification was presented to a border agent while passing through a port of entry into the United States, and therefore the charge against him was already time-barred when he was indicted in 2012. Over the government's objection, the district court allowed testimony supporting this defense from Zamudio's second wife regarding their crossing the border into the United States during the 2001 Memorial Day weekend. However, the district court ultimately denied Zamudio's renewed motion to acquit at the close of evidence based on his statute of limitations defense, and instead, over Zamudio's

objections, instructed the jury with regard to the issue of Zamudio's reentry and the government's alleged knowledge that he was present in the United States illegally as follows:

> When a deportee gains readmission to the United States by presenting an invalid travel document to border authorities, there is not notice to the federal authorities that his presence in the United States is illegal. In such a circumstance, the statute of limitations does not begin to run until the deportee is subsequently found in the United States by federal immigration authorities.

The jury found Zamudio guilty and he was sentenced to 37 months in prison.

Zamudio argues on appeal that the district court erred in (1) denying his motion to dismiss the indictment because the underlying deportation proceeding was fundamentally unfair, (2) omitting a jury instruction on constructive knowledge with regard to his statute of limitations defense, and (3) denying his motion for acquittal at the close of evidence based on his statute of limitations defense.

II.

(1)

We review de novo a district court's denial of a motion to dismiss an indictment, including one charging illegal reentry following deportation based on an alleged due process violation in the underlying deportation proceeding. *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1129 (9th Cir.

2013). To challenge the validity of the underlying deportation order in a criminal proceeding under 8 U.S.C. § 1326, the defendant must meet three requirements by showing that (1) he exhausted any available administrative remedies for relief against the order, (2) the deportation proceedings denied him the opportunity for judicial review, and (3) the entry of the order was "fundamentally unfair."   8 U.S.C. § 1326(d).    Under the third requirement, the order is "fundamentally unfair" only if the defendant shows that his due process rights were violated *and* that he suffered prejudice as a result. *United States v. Valdez-Novoa*, 760 F.3d 1013, 1020 (9th Cir. 2014).

For the reasons stated in the district court's order denying Zamudio's motion to dismiss, we hold that the district court correctly concluded that Zamudio failed to meet his burden in  collaterally  attacking  his  underlying  deportation proceeding. The district court correctly reasoned that both of Zamudio's convictions rendered him removable. Kidnapping in violation of California Penal Code § 207(a) is categorically a crime of violence for which Zamudio was removable based on his 1994 conviction. *Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1127 (9th Cir. 2012). Zamudio's attorney's admission that the 2000 conviction was for methamphetamine possession and that Zamudio was therefore removable "relieved the government of the obligation to present any evidence on the factual question of the nature of the drug offense," such that "the government's burden [regarding removability] [wa]s satisfied." *Perez-Mejia v. Holder*, 663  F.3d  403,  414–15  (9th  Cir.  2011); *see also Santiago-Rodriguez v. Holder*, 657 F.3d 820, 829 (9th Cir. 2011) (an alien's admission of factual allegations from the NTA "binds the alien and relieve[s] the [g]overnment of the obligation to present any evidence on th[at] factual question,"

and "an attorney's in-court admission of the NTA's allegations made on behalf of his alien client is treated no differently") (first and third alterations in original) (internal citations and quotation marks omitted).[1] Furthermore, even if the IJ erred in failing to advise him of his ability to apply for relief from removal, Zamudio suffered no prejudice because if he had obtained relief from removal for his 1994 conviction under 8 U.S.C. § 1182(c), that would have rendered him ineligible for relief from removal for his 2000 conviction under 8 U.S.C. § 1229b(c)(6). *Garcia-Jimenez v. Gonzales*, 488 F.3d 1082, 1086 (9th Cir. 2007).

Zamudio's argument that he should not be bound by Smith's admission because it was the result of ineffective assistance of counsel is unavailing. The standard for establishing ineffective assistance of counsel under the Fifth Amendment in immigration cases is higher than the Sixth Amendment standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), so if Zamudio fails to meet the *Strickland* standard, he cannot meet the higher Fifth Amendment standard either. *Torres-Chavez v. Holder*, 567 F.3d 1096, 1100 (9th Cir. 2009).

Even under *Strickland*, Zamudio's counsel did not perform below an "objective standard of reasonableness" in failing to make legal arguments that were not yet established at the time of Zamudio's removal proceeding. 466 U.S. at 688. *Strickland* does not require attorneys to make arguments based on cases that have not yet been decided. *See Clark v.*

---

[1] We grant Zamudio's motion for leave to file an oversized citation of supplemental authorities. Zamudio's citation to *Medina-Lara v. Holder*, 771 F.3d 1106 (9th Cir. 2014), does not alter our analysis that Zamudio was bound by his attorney's admission.

*Arnold*, 769 F.3d 711, 727 (9th Cir. 2014) ("[W]e do not expect counsel to be prescient about the direction the law will take") (citation and quotation marks omitted). The law in existence at the time of Zamudio's deportation hearing gave Zamudio no hope of avoiding deportation. As a result, even if Zamudio were correct that the charging and sentencing documents for his 2000 conviction were insufficient to show that he had been convicted of possessing a federally prohibited drug under *United States v. Vidal*, 504 F.3d 1072, 1087–88 (9th Cir. 2007) (en banc), Smith cannot have been expected to make that argument seven years before our en banc court so held. Nor was Smith required to anticipate the Supreme Court's ruling in *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001), by arguing that neither the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 nor the Antiterrorism and Effective Death Penalty Act of 1996 could be applied retroactively. Zamudio's counsel therefore did not perform deficiently either under *Strickland* or under the more exacting Fifth Amendment standard.

Zamudio has also failed to demonstrate prejudice. As the district court stated, Zamudio "does not now contend that the statements of his attorney, made on his behalf, were factually incorrect, and does not provide any facts that would contradict the admissions." At no point has Zamudio cited "any authority for the proposition that voluntarily conceding a true fact can fundamentally undermine the fairness of a proceeding, nor are we aware of any." *Torres-Chavez*, 567 F.3d at 1102. Under these circumstances, we will not hold that Zamudio was prejudiced by his counsel's challenged actions.

(2)

Zamudio also disputes the district court's decision not to provide a constructive knowledge jury instruction with regard to his statute of limitations theory. A district court's jury instructions are reviewed de novo as to their accuracy and for abuse of discretion as to their formulation. *United States v. Stinson*, 647 F.3d 1196, 1215 (9th Cir. 2011). However, because we hold as a matter of law that the statute of limitations could not have run prior to the indictment on the facts of this case, the specific standard of review does not change our analysis.

Although we have clarified that the statute of limitations for "[t]he offense of being found in the United States [begins to run] when an alien is discovered and identified by the immigration authorities," *United States v. Hernandez*, 189 F.3d 785, 791 (9th Cir. 1999), we have not addressed whether such discovery and identification must be based on the government's actual knowledge or can instead be proven under a constructive knowledge theory. *See United States v. Ortiz-Villegas*, 49 F.3d 1435, 1437 (9th Cir. 1995) (discussing a constructive knowledge standard in the context of the statute of limitations for section 1326 but declining to reach the question). We need not reach this question, however, because we hold that the government does not acquire knowledge—actual or constructive—of an alien's illegal presence in the United States upon being presented with an invalid travel document. The statute of limitations therefore cannot begin to run at that point because without such notice, the "found in" offense in section 1326 remains incomplete.

Other circuits have adopted a similar rule on the theory that the statute of limitations is not designed to reward deception. For example, in *United States v. Acevedo*, the Second Circuit addressed the question whether a deported alien who reentered the United States using his real name and *some* valid documents, but who presented an invalid green card, could argue that the statute of limitations began to run when he presented such documentation to authorities upon reentry. 229 F.3d 350, 353–54 (2d Cir. 2000). We agree with the Second Circuit that since "a green card is an accepted means by which an alien may demonstrate the legality of his admission, a deportee's presentation of an invalid green card . . . does not place the INS on notice that his presence in the United States [is] illegal, even if the alien uses his real name." *Id.* at 355 (internal citations and quotation marks omitted); *see also United States v. Gordon*, 513 F.3d 659, 663 (7th Cir. 2008) ("A deportee who reenters the United States by presenting an invalid green card but uses his real name still deceives immigration officials as to the legality of his presence"), *abrogated on other grounds by Nelson v. United States*, 555 U.S. 350 (2009); *cf. United States v. Scott*, 447 F.3d 1365, 1370 (11th Cir. 2006) (accepting the defendant's argument that the statute of limitations began to run at his initial interview with immigration officials given that he "was completely honest" with immigration officials during that interview, not only giving them "his real name, the alias he was then operating under, [and] his correct personal information," but also "confessing his illegal reentry and presence in the United States, detailing the prior date of his deportation, and detailing how he illegally reentered the country").

In this case, according to Zamudio's own witness, his 2001 entry involved the presentation of an invalid green card

as if it had been a valid travel document. Zamudio's argument that the presentation of his green card gave immigration authorities knowledge of his illegal presence in the United States thus directly contradicts the only possible purpose for presenting the green card in that context: to convince immigration authorities that he was entering the United States legally.

We hold that Zamudio's "found in" offense under section 1326 was not complete—and therefore the statute of limitations did not begin to run—when Zamudio reentered in 2001 because his presentation of an invalid green card as if it were valid did not place authorities on notice that Zamudio's presence in the United States would be illegal. Zamudio's successful use of "specious documentation that conceal[ed] the illegality of his presence" in crossing back into the United States should not empower him subsequently to avoid prosecution on the theory that the government should have known he was entering the United States illegally. *Acevedo*, 229 F.3d at 353 (alteration in original), *quoting United States v. Rivera-Ventura*, 72 F.3d 277, 281 (2d Cir.1995); *Gordon*, 513 F.3d at 668 (Ripple, J., concurring) ("I do not believe that the Government can be charged with constructive notice when [the defendant] presented himself at the border with an invalid, although authentic, green card. Indeed, it seems to me that his actions at that point can be characterized as affirmatively misleading the Government.").

Zamudio's citation to *United States v. Gomez*, 38 F.3d 1031 (8th Cir. 1994), does not help him. In *Gomez*, the defendant voluntarily filed immigration papers with INS officials; those papers "provided virtually no truthful biographical data," but did contain a set of valid fingerprints. *Id.* at 1033, 1037. Because those fingerprints provided a

means by which the INS could have determined, in the exercise of diligence, Gomez's status as a deported alien, the court held that the "found in" violation accrued—for purposes of commencing the statute of limitations—at the earliest point at which a normal fingerprint processing request would have revealed Gomez's illegal status. *Id.* at 1037–38. The court ultimately concluded that Gomez was indicted within the statutory period. *Id.* at 1038.

Even if we were to accept this out of circuit case, which we need not, it would not change our position. In *Gomez*, the alien provided INS with both the information and the means to discover his immigration status. In this case, by contrast, Zamudio did not leave any identifying information or documents with authorities; instead, he retrieved his invalid green card and took it with him when he left the port of entry. This left immigration officials unable—even in the exercise of diligence—to identify him, to ascertain that his entry was illegal, or to locate him for further investigation. *Compare Gomez*, 38 F.3d at 1037 ("*As of May 3, the INS was in possession* of an I-687 which contained much falsified data, but which also contained Gomez's fingerprints, a means by which the INS could determine Gomez's true identity and status as a deported alien;" as a result, without an imputation of constructive knowledge to the government, "Gomez . . . would be required to live in perpetual fear of prosecution." (emphasis added)).

Although there may be good reason to think that our holding above regarding the use of invalid travel documents would have led us to follow different reasoning than that followed by the Eighth Circuit in *Gomez*, we would have ultimately reached the same conclusion. On the facts of this case, we need not reach the question of whether constructive

knowledge can or should be imputed to the government when a defendant leaves accurate information with the government from which it could be determined that the defendant is in the country illegally. Accordingly, we hold that knowledge of Zamudio's status cannot be imputed to the government here.

(3)

Zamudio also argues that the district court erred by failing to grant his motion for acquittal because no reasonable jury could have found that Zamudio failed to meet his burden of proving his statute of limitations defense, given the evidence. Our conclusions above with regard to Zamudio's statute of limitations defense foreclose this argument.

**AFFIRMED.**