**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4121

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

DELFINO NATALIO DE LEON-RAMIREZ, a/k/a Enrique Roblero Escobar, a/k/a
Alejandro Pablo Hernandez, a/k/a Delfino Puac-Deleon, a/k/a Delfino Deleon-
Ramerez, a/k/a Delfino De Leonfino-Ramirez,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at
Richmond. Henry E. Hudson, Senior District Judge. (3:17-cr-00089-HEH-DJN-1)

Argued: January 31, 2019                                    Decided: May 29, 2019

Before WYNN, DIAZ, and RICHARDSON, Circuit Judges.

Affirmed by published opinion. Judge Diaz wrote the opinion, in which Judge Wynn and
Judge Richardson joined.

**ARGUED:** Mary Elizabeth Maguire, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Richmond, Virginia, for Appellant. Stephen David Schiller, OFFICE OF
THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:**
Geremy C. Kamens, Federal Public Defender, Caroline S. Platt, Appellate Attorney,
OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.
G. Zachary Terwilliger, United States Attorney, OFFICE OF THE UNITED STATES

ATTORNEY, Alexandria, Virginia, for Appellee.

_____

DIAZ, Circuit Judge:

Delfino Natalio De Leon-Ramirez was indicted for illegal reentry more than 10 years after the government learned that he had unlawfully reentered the United States. Although the limitations period for this offense was five years, the district court refused to dismiss the indictment as untimely because it found that De Leon-Ramirez was "fleeing from justice," which tolled the statute of limitations. *See* 18 U.S.C. § 3290. De Leon-Ramirez challenges that finding on appeal. But, as it was not clearly wrong, we affirm.

I.

A.

In 2005, De Leon-Ramirez pleaded guilty to making counterfeit immigration documents. He served about seven months of a 15-month sentence before being deported to his native Guatemala in March 2006. Unbeknown to authorities, however, De Leon-Ramirez reentered the United States some time later.

Then, in February 2007, De Leon-Ramirez walked into an auto parts store in Chesterfield County, Virginia, and asked to exchange an old clutch. The store clerk obliged, but De Leon-Ramirez was unsatisfied with the replacement part and soon returned demanding a different model. When the store clerk this time refused, an argument erupted. The police were called, and De Leon-Ramirez was arrested.

Upon his arrest, De Leon-Ramirez gave the police sergeant, Bradford Connor, a Mexican ID showing the name "Enrique Roblero Escobar." J.A. 109. After taking De Leon-Ramirez into custody, Connor had the booking department run his fingerprints,

3

which produced an FBI record under the name "Delfino Puac-Deleon" and a Virginia record under "Alejandro Hernandez." *Id.* The birth date on the Mexican ID, like the name, didn't line up with those in the database.

De Leon-Ramirez was charged with larceny and trespassing and released on bond nine days later. The paperwork accompanying his release, all completed under the name "Delfino Puac-Deleon," lists an address in Richmond, a telephone number, and a defense attorney's name and telephone number. J.A. 114–119. The papers also note a hearing scheduled for April 30, 2007, in Chesterfield County district court. The only document that De Leon-Ramirez signed, however, sets a hearing date for March 30, 2007. De Leon-Ramirez didn't appear on April 30, but the record doesn't show whether he appeared on March 30 or knew that the court had actually scheduled his hearing for a month later.

Nevertheless, after De Leon-Ramirez failed to appear on April 30, an arrest warrant issued and John Farmer, a Chesterfield County "fugitive detective," was put on the case. J.A. 195. Farmer emailed Eugene Carr, of the U.S. Marshals' fugitive task force, listing two aliases and asking whether Carr had contacts in the U.S. Probation Office who could help with his search. On May 16, Carr replied that "Delfino Puac-Deleon AKA Alejandro Hernandez" had been deported in 2006 and that a probation officer had "a case on him." J.A. 124. Farmer wrote back that he had talked with an official from Immigration and Customs Enforcement (ICE) and asked Carr whether the defendant still had probation obligations. The record doesn't show whether Farmer searched for De Leon-Ramirez at his given address or phoned him or his attorney.

4

Nine years passed. Then, in May 2016, Richmond police arrested De Leon-Ramirez on unrelated charges. He was released on bond and, once more, failed to attend his court hearing. Another arrest warrant issued, which got the attention of federal authorities: ICE began its own fugitive investigation and arrested De Leon-Ramirez about a year later.

B.

Facing a single-count indictment for illegal reentry under 8 U.S.C. § 1326, De Leon-Ramirez moved to dismiss the charge because the five-year statute of limitations for such offenses had lapsed. The district court referred the motion to a magistrate judge. After holding two evidentiary hearings, the magistrate judge issued a report and recommendation finding many of the above facts and advising the district court to deny De Leon-Ramirez's motion to dismiss.

The magistrate judge first found that the limitations period commenced in May 2007, when ICE learned of De Leon-Ramirez's illegal presence in the United States. The judge based this finding primarily on Detective Farmer's May 2007 email, which mentioned that he had spoken with ICE, and a handwritten note in De Leon-Ramirez's ICE file listing the address and aliases he gave Chesterfield County police. Though heavily litigated below, the finding that ICE knew in 2007 about De Leon-Ramirez's unlawful return is undisputed on appeal.

However, the magistrate judge concluded that the indictment was nonetheless timely because De Leon-Ramirez fled from justice, which tolled the statute of limitations. J.A. 213. "[T]hrough the use of aliases and failure to appear at court hearings," he wrote, De Leon-Ramirez "concealed himself with the intent to avoid arrest and prosecution." *Id.*

5

The judge also emphasized "the context of [De Leon-Ramirez's] repeated efforts to illegally enter the United States and avoid detection of his illegal status," as well as his prior conviction for creating fake immigration documents. *Id.*

De Leon-Ramirez filed objections to the magistrate judge's report. But about two weeks later—and before the district court had ruled on the motion to dismiss—the parties struck a conditional plea agreement under which De Leon-Ramirez would plead guilty but could appeal the denial of his motion to dismiss. To "facilitate the plea agreement" and "expedite [the] appeal," the parties together asked the district court to adopt the report and recommendation "over the objections filed by Defendant" and stipulated that no hearing or further briefing about De Leon-Ramirez's motion to dismiss was necessary. J.A. 255.

At a plea hearing that same day, the district court expressed concern about the parties' arrangement. The court confirmed that it had entered an order (J.A. 255) reflecting that it "did review the magistrate's findings of facts and conclusions" and adopted them after that review. J.A. 232. But, it said, the parties' agreement "pretty much precludes [it] from making any changes." *Id.* And while the court ultimately agreed to the proposed plea arrangement, it did so "with great reservation" and "only because [it had] a tremendous amount of respect for both the lawyers." *Id.*

De Leon-Ramirez was later sentenced to 21 months in prison followed by two years of supervised release. He then appealed the denial of his motion to dismiss the indictment.

II.

Before reaching the merits, we address a procedural question that we raised with the parties: whether the district court conducted the requisite de novo review of the magistrate judge's report and recommendation.

The Federal Magistrates Act allows the district court to refer pretrial matters to a magistrate judge. 28 U.S.C. § 636(b)(1)(A). For certain matters—including a defendant's motion to dismiss an indictment—the magistrate judge can't decide the motion but may conduct hearings and recommend a resolution to the district court. *Id.* § 636(b)(1)(B). If any party objects to the magistrate judge's recommendations, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1); *see United States v. George*, 971 F.3d 1113, 1118 (4th Cir. 1992) (describing district court's "obligation to determine de novo any issue to which proper objection is made").

The district court's duty to independently review the magistrate judge's report upon objection advances Congress's intent that district judges bear "primary responsibility for supervision of federal magistrates' functions." *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). As the court of appeals, therefore, we generally don't reach factual or legal questions in a magistrate judge's report that were not first subject to de novo review by the district court. For instance, we usually don't allow parties to appeal a magistrate judge's findings that were not objected to below, as § 636(b) doesn't require de novo review absent objection. *E.g.*, *Wells v. Shriners Hosp.*, 109 F.3d 198, 200–01 (4th Cir. 1997); *Schronce*, 727 F.2d at 93–94. Likewise, we have remanded appeals when the district court applied a

7

more lenient standard of review than the de novo review required by § 636(b). *See Aluminum Co. of Am. v. U.S. Envtl. Prot. Agency*, 663 F.2d 499, 502 (4th Cir. 1981) (remanding when district court reviewed magistrate judge's report for clear error).

In this case, parts of the record suggest that the district court did not conduct the de novo review that is required before we may reach the merits of this appeal. Most troublingly, the district court suggested that the parties' conditional guilty plea, which asked it to adopt the report and recommendation over De Leon-Ramirez's objections, "preclude[d] [the court] from making any changes" to the report. J.A. 232. Clearly, a court that felt bound to accept the magistrate judge's report couldn't conduct anything like the robust, independent review contemplated by the Federal Magistrates Act. *See* 28 U.S.C. § 636(b)(1) (district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions"); *see also George*, 971 F.2d at 1118 ("By definition, de novo review entails consideration of an issue as if it had not been decided previously."). We also note that the court, perhaps for these reasons, expressed "great reservation" about the parties' agreement—a comment that neither the government nor De Leon-Ramirez could explain at oral argument. J.A. 232.

At the same time, however, other evidence suggests the district court did in fact conduct the appropriate review. The court told counsel at the hearing that it had reviewed the report's findings and conclusions de novo, and its order reflected that it had "conducted a de novo review of the objections." J.A. 255. Given that, we think it fair to presume that the district court complied with its obligations under the statute. *See Northington v. Marin*,

8

102 F.3d 1564, 1570 (10th Cir. 1996) ("[T]he district court is presumed to know that de novo review is required."). We therefore turn to the merits of the appeal.[1]

III.

The sole merits issue is whether the district court should have dismissed De Leon-Ramirez's indictment as untimely. Because the illegal reentry statute provides no statute of limitations, prosecutions are subject to the general five-year limitations period for non-capital crimes. *See* 18 U.S.C. § 3282(a). As with most statutes of limitations, this period starts running "when the crime is complete." *Pendergast v. United States*, 317 U.S. 412, 418 (1943); *see* 18 U.S.C. § 3282(a) (statute of limitations begins "after such offense shall have been committed").

De Leon-Ramirez's particular illegal reentry crime is complete when a noncitizen, after being deported, "is at any time found in" the United States without official permission. 8 U.S.C. § 1326(a). Many courts have said that a noncitizen is "found in" the United States—and that the statute of limitations therefore begins to run—when federal authorities discover his illegal presence within these borders. *United States v. Vargas*, 408 F. App'x 676, 679 (4th Cir. 2011) (unpublished after argument) (collecting cases).[2]

---

[1] Our ruling should not, however, be read as an endorsement of the parties' unusual plea agreement.

[2] *See also, e.g.*, *United States v. Rivera-Ventura*, 72 F.3d 277, 281–82 (2d Cir. 1995); *United States v. DiSantillo*, 615 F.2d 128, 137 (3d Cir. 1980); *United States v. Ramirez-Salazar*, 819 F.3d 256, 258 (5th Cir. 2016); *United States v. Gomez*, 38 F.3d 1031, 1036 (8th Cir. 1994); *United States v. Zamudio*, 787 F.3d 961, 966 (9th Cir. 2015); *United* (continued)

We have yet to decide precisely when the limitations period begins to run on this offense. *See United States v. Uribe-Rios*, 558 F.3d 347, 352–56 (4th Cir. 2009) (holding that, even if constructive knowledge of defendant's illegal presence triggered statute of limitations for § 1326, government lacked constructive knowledge). But relying on the authorities cited above, the district court concluded that the clock started running in May 2007 when ICE learned from Detective Farmer that De Leon-Ramirez was in the United States illegally. Because no party disputes this ruling, we will assume (without deciding) that the statute of limitations began running from this date.

Even if a crime is complete, however, the statute of limitations doesn't run while the defendant is a fugitive. The question in this case is whether De Leon-Ramirez fit that description.

### A.

The fugitive tolling statute provides, in full, that "[n]o statute of limitations shall extend to any person fleeing from justice." 18 U.S.C. § 3290. Although the law predates the Bill of Rights, *see* An Act for the Punishment of certain Crimes against the United States, ch. 9, § 32, 1 Stat. 112, 119 (1790), we appear to have only one century-old published case interpreting it. *See Ferebee v. United States*, 295 F. 850, 851 (4th Cir. 1924).

---

*States v. Palomino Garcia*, 606 F.3d 1317, 1323 (11th Cir. 2010). *But see United States v. Are*, 498 F.3d 460, 466–67 (7th Cir. 2007) (musing that limitations period might begin only once noncitizen is caught or turns himself in).

Other circuits, however, have encountered this statute more recently. And the "modern and prevalent" approach is that fugitive tolling requires proof, by a preponderance of evidence, "that the defendant concealed himself with the intent to avoid prosecution." *United States v. Greever*, 134 F.3d 777, 780–81 (6th Cir. 1998); *accord United States v. Florez*, 447 F.3d 145, 151 (2d Cir. 2006) (collecting cases). *But see In re Assarson*, 687 F.2d 1157, 1162 (8th Cir. 1982) (mere "absence from the jurisdiction," without intent to avoid arrest, suffices to prove fugitive status). We adopt the intent-based approach as it accords with the text of § 3290, Supreme Court case law, and our lone precedent on the issue. *See Streep v. United States*, 160 U.S. 128, 133 (1895) (for fugitive tolling, it is "sufficient that there is flight with the intention of avoiding being prosecuted"); *Ferebee*, 295 F. at 851 (statute of limitations tolled when defendant left "his usual place of abode and conceal[ed] himself for the purpose of evading arrest"); *see also United States v. Wazney*, 529 F.2d 1287, 1289 (9th Cir. 1976) ("As commonly used, the word 'fleeing' connotes the performance of some volitional act.").

Our sister circuits have identified several factors that can indicate a defendant's intent to evade arrest or prosecution. For instance, such intent "may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending." *United States v. Catino*, 735 F.2d 718, 722 (2d Cir. 1984). The defendant's absence from the jurisdiction, though "not a required element," may also evince his intent to avoid prosecution. *Greever*, 134 F.3d at 780. So may his use of aliases and false information. *See Rivera-Ventura*, 72 F.3d at 284–85 (fugitive defendant gave false address to immigration service and false names to local police). And the nature and extent of efforts

11

to apprehend the defendant may also be a relevant factor. *Florez*, 447 F.3d at 152; *see Ferebee*, 295 F. at 851 (government couldn't find fugitive defendant despite searching his parents' house, speaking to neighbors, and reading mail).

Fugitive status is a factual question reviewed for clear error. *E.g.*, *Ross v. U.S. Marshal*, 168 F.3d 1190, 1193 (10th Cir. 1999); *United States v. Fonseca-Machado*, 53 F.3d 1242, 1243 (11th Cir. 1995).[3] We therefore won't disturb such a finding unless we are left with the "definite and firm conviction" that a mistake was made. *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## B.

De Leon-Ramirez argues that the record doesn't support the district court's finding that, between spring 2007 and June 2017, he concealed himself with the intent to avoid arrest and prosecution. Were that true, the statute of limitations would have expired in 2012, rendering his indictment untimely. Applying the principles outlined above, however, we cannot say that the district court clearly erred.

Several facts support its conclusion. Most notably, De Leon-Ramirez sought to withhold his true identity from law enforcement. The record shows that when he was arrested by Sergeant Connor following the clutch incident in 2007, De Leon-Ramirez

---

[3] We decline De Leon-Ramirez's invitation to review de novo the "overall question" of whether the government has established flight under § 3290. *See* Reply Br. at 3. As we have explained, flight under § 3290 is synonymous with a defendant's intentionally evading arrest. De Leon-Ramirez concedes that a finding about the defendant's intent is a question of fact. In all practical sense, then, fugitive status is a factual question.

12

presented a Mexican ID bearing a false name and birth date.  And after the police blew this ruse by finding the "Puac-Deleon" alias, De Leon-Ramirez permitted the authorities to believe this was his correct name, as its appearance throughout his bond paperwork—including on papers signed by De Leon-Ramirez—demonstrates.  As other courts have recognized, the use of aliases by someone facing prosecution suggests an intent to avoid the pending legal process.  *See Rivera-Ventura*, 72 F.3d at 285 (noncitizen "who knows he is subject to criminal prosecution and who gives . . . law enforcement authorities false names and addresses has engaged in acts of self-concealment that may properly be found to constitute" flight under § 3290).

The record also shows that on two occasions, in April 2007 and May 2016, De Leon-Ramirez failed to show up for scheduled court dates.  Although "failure to make a court appearance in itself" may not necessarily render one a fugitive from justice, *United States v. Singleton*, 702 F.2d 1159, 1169 (D.C. Cir. 1983), the record shows incriminating circumstances beyond the missed court dates themselves.  Specifically, it shows that De Leon-Ramirez, knowing charges were pending against him in Chesterfield County, failed to appear for trial after giving county authorities false information about his name, birth date, and nationality.  We cannot say it was clear error to infer an intent to avoid prosecution from this course of conduct.

De Leon-Ramirez argues, however, that we cannot draw conclusions from the missed court appearance on April 30, 2007 because the only papers De Leon-Ramirez signed gave an incorrect trial date.  Without other evidence that he intended to shirk his pending charges, we might agree.  But the fact that De Leon-Ramirez gave false

13

information to the same law enforcement authorities makes it quite plausible that he did not miss his trial out of simple misunderstanding.

The official response to De Leon-Ramirez's missed April 30 hearing also raises fair suspicion about that failure to appear. First, a warrant issued for his arrest, which at least hints that he hadn't appeared to answer the charges against him on March 30. Second, and more importantly, the authorities saw fit to engage a "fugitive detective," who then told ICE and the U.S. Marshals that he was looking for De Leon-Ramirez and asked for help with his search. These measures don't depict an investigation so thorough that we can infer De Leon-Ramirez's flight based on them alone. *Cf. Florez*, 447 F.3d at 154 (law enforcement sought defendant at various locations, and spoke with family, coworkers, and friends); *Greever*, 134 F.3d at 780–81 (government searched for defendant at two locations and repeatedly tried to find him after learning he had moved). But that the authorities took these steps does, at the very least, suggest De Leon-Ramirez never tried to answer his charges, even on the incorrect date.

Further, as the magistrate judge recognized, De Leon-Ramirez's failure to appear for court in May 2016 strengthens the inference that his earlier absence was the result of intentional evasion. De Leon-Ramirez asks us to disregard the later missed court date as it occurred after the limitations period (supposedly) expired in 2012, and therefore cannot be used to toll that period. But the government contends that the statute was tolled until ICE apprehended De Leon-Ramirez in 2017. That he missed a court date in 2016, combined with his failure to appear in 2007, is probative of his intent to evade prosecution throughout

14

this 10-year period.  *Cf.* Fed. R. Evid. 404(b) (evidence of other acts may be used to prove intent).

We finally note the dearth of evidence that De Leon-Ramirez maintained contact with either the court or his defense counsel.  Such efforts might have suggested that De Leon-Ramirez intended to resolve the charges against him and therefore undermined the government's claim that he was a fugitive.  The lack of such evidence, combined with De Leon-Ramirez's attempts to deceive law enforcement, only bolsters the conclusion that he missed his trial intentionally.  *See Singleton*, 702 F.2d at 1169 ("[T]he facts that [the defendant] failed to appear, that he did not notify the bail agency of his change of address, and that he failed to maintain contact with his attorney would tend to indicate flight.").

In sum, the record supports the district court's factual finding that De Leon-Ramirez was "fleeing from justice," tolling the statute of limitations under 28 U.S.C. § 3290.  De Leon-Ramirez's aliases and the circumstances surrounding his skipped court dates together support a plausible narrative that he sought to evade prosecution by giving police false information and then twice failing to appear in court when ordered to do so.[4]  We therefore may not disturb this finding even if we would have concluded otherwise as the trier of fact. *Anderson*, 470 U.S. at 573–74.  Accordingly, we affirm the district court's conclusion that De Leon-Ramirez's indictment was timely.

*AFFIRMED*

---

[4] Given the other record evidence, we do not rely on De Leon-Ramirez's conviction for counterfeiting or, as the government puts it, his "backdrop of status as [an] illegal alien" to sustain the district court's finding.  *See* Appellee's Br. at 37–38.

15